IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

COBRA CAPITAL LLC,

        Plaintiff,

v.

LASALLE BANK CORPORATION,
LASALLE BANK N.A., LASALLE BANK
MIDWEST N.A., LASALLE NATIONAL
LEASING CORPORATION,

        Defendants.

No. 05 C 2419

## MEMORANDUM OPINION AND ORDER

Defendants LaSalle Bank Corporation, LaSalle Bank N.A., LaSalle Bank Midwest N.A. and LaSalle National Leasing Corporation (collectively "LaSalle Bank") move for summary judgment and to strike a witness declaration and portions of the statement of material fact relied on by plaintiff, Cobra Capital LLC ("Cobra"), in opposing summary judgment. For the reasons stated herein, defendants' motions are denied.

### I. Background

This case concerns the ownership and protectability of the phrases "Making Impossible Possible" and "Making the Impossible Possible." Neither party disputes that the use of these phrases in the banking and lease financing industry was conceived by Dale Kluga, an individual who applied to register the phrase "Making

Impossible Possible" as a service mark on January 13, 2000. (U.S. Patent and Trademark Office ("PTO") file Serial No. 75/895,345.) During that time, Kluga was the manager, president and part owner of Great American Leasing Company ("GALCO"), which used the phrases in connection with its business. On August 14, 2000, Kluga represented in a declaration to the PTO that he had used the phrase through a "related company." GALCO ceased all operations, and was later dissolved, and Kluga became the sole member, manager and president of Cobra. Cobra's use of both phrases, in connection with its banking and lease financing business, began in 2001. On September 3, 2002, the PTO granted Kluga a Certificate of Registration for the service mark "Making Impossible Possible." LaSalle Bank began its use of the phrase "Making More Possible" in March of 2005. On April 25, 2005, Kluga executed an assignment of his rights in the registered mark ("the Assignment") to Cobra. This litigation ensued. Cobra filed suit against LaSalle Bank for its use of "Making More Possible" for infringement and dilution of the mark "Making Impossible Possible."

## II. Motions to Strike

Plaintiff's opposition to summary judgment includes a declaration by Kluga. Defendants move to strike this on grounds that it lacks foundation and provides legal conclusions. I disagree. Kluga's declaration is based on personal knowledge as a result of his direct involvement in the events in question. This

is all that is required under Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.") and Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge"). Personal knowledge may include "reasonable inferences . . . 'grounded in observation or other first-hand personal experience.'" *Payne v. Pauley,* 337 F.3d 767, 772 (7th Cir. 2003) (quoting *Visser v. Packer Eng'g Assoc.,* 924 F.2d 655, 659 (7th Cir. 1991) (en banc)). In support of its motion, LaSalle Bank also identifies inconsistencies between Kluga's declaration and deposition testimony. These inconsistencies are not egregious and concern the appropriate weight Kluga's declaration should be afforded by the trier of fact, not its admissibility. As such, the motion to strike is denied.

Next, defendants move to strike numerous portions of Cobra's statement of material facts in opposition to the motion for summary judgment. These motions are denied as moot. I did not rely on any statements that did not comply with Local Rule 56.1 or that were not admitted or addressed in defendants' briefs. Any other violations that may have occurred are irrelevant to the resolution of the summary judgment motion.

3

III. Summary Judgment Motion

In order to prevail under the Lanham Act for trademark infringement, a plaintiff must establish that (1) it owns a protectable trademark; and (2) there exists a likelihood of confusion on the part of the public. *Nike, Inc. V. "Just Did It" Enter.*, 6 F.3d 1225, 1227 (7th Cir. 1993). Defendants move for summary judgment on grounds that Cobra cannot establish the first prong of this inquiry. Defendants argue Cobra does not "own" the mark and that the phrase "Making Impossible Possible" is descriptive and ,therefore, not "protectable."

Summary judgment is only appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgement as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999); Fed. R. Civ. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). I do not make "credibility determinations, weigh the evidence, or decide which inferences to draw from the facts." *Payne*, 337 F.3d at 770. "[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment should be denied. *Anderson*, 477 U.S. at 248.

### a. Ownership

I must first determine the nature of Cobra's rights in the phrases at issue. Cobra alleges it is the owner of (I) the registered mark, "Making Impossible Possible," by virtue of the Assignment from Kluga, and (ii) "Making the Impossible Possible" via Kluga's permission to use that phrase. LaSalle Bank attacks the adequacy of Kluga's registration and subsequent assignment to Cobra. I evaluate the validity of each of these events in the order in which they occurred.

First, Kluga's application and registration of the mark is entitled to a presumption of validity. 15 U.S.C. § 1115 (registration is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark"). LaSalle Bank bears the burden of overcoming the presumption by clear and convincing evidence. *See The Money Store v. Harriscorp Fin. Inc.*, 689 F.2d 666, 670 (7th Cir. 1982). Defendants argue this registration is void *ab initio* because both the registered phrase "Making Impossible Possible," as well as the phrase "Make the Impossible Possible," were first used by GALCO and not Kluga in his individual capacity. Therefore, GALCO owned both phrases, not Kluga. In support, Defendants rely on the PTO file and excerpts from Kluga's

5

deposition; specifically, that the only specimen of use submitted in support of the application was a GALCO print advertisement and Kluga's statements that he was not using the phrase himself.

Plaintiff does not dispute that GALCO, and subsequently Cobra, used the marks. Cobra contends, however, that Kluga exercised control over the nature and quality of the services offered by GALCO and Cobra in connection with the mark. Therefore, pursuant to the Lanham Act, Kluga properly acquired ownership rights in the mark. Cobra points out Kluga was the sole manager and president of GALCO and, for purposes of the Lanham Act, "in control" of the use of the mark. The PTO file reflects Kluga registered the mark for use by "a related company." Cobra relies on his deposition testimony and declaration, the PTO file, GALCO's Operating Agreement, and Kluga's Employment Agreement in support of their argument.

A genuine issue of material fact exists concerning Kluga's ownership of the mark. The Lanham Act specifically contemplates allowing applicants to register marks used by "related companies . . . to the benefit of the registrant or applicant for registration." 15 U.S.C. § 1055. In turn, "'related company' means any person whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services or in connection with the mark used." 15 U.S.C. § 1127.

Kluga's status and responsibilities as the sole manager and president under GALCO's Operating and Employment Agreements, his deposition testimony and declaration, as well as the continued use of the mark after GALCO's dissolution suggests compliance with §§ 1055 and 1127. See *Doeblers' Pennsylvania Hybrids, Inc., v. Doebler, III*, 442 F.3d 812, 823 (3rd Cir. 2006) ("Use of a trademark need not always be made directly by the trademark owner and is often made 'with the permission' of the owner via a licensing agreement. Indeed, sometimes the only use of a mark is through a licensee."); *Hawaii-Pacific Apparel Group, Inc. v. Cleveland Brown Football Co. LLC*, 418 F. Supp. 2d 501, 506 (S.D.N.Y. 2006) ("the Lanham Act contemplates allowing applicants to register marks based on controlled use by another"); see also 2 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 18.46 (4th ed. 2004) ("Ownership rights in a trademark or service mark can be acquired and maintained through the use of the mark by a controlled licensee even when the first and only use of the mark was made . . . by the licensee.") Specifically, the Operating Agreement afforded Kluga a great deal of power over GALCO's daily operations.[1] The Employment Agreement also sets forth that "if

---

[1] Kluga never submitted for, or received, reimbursement by GALCO for any expenses incurred in registering the mark. Kluga would have been entitled to this under Article XI (Management) ¶ 11.2, which states "[t]he Manager shall be entitled to receive reasonable compensation for services rendered and reimbursement for his reasonable out-of-pocket expenses incurred on behalf of the Company . . . ."

7

[Kluga's] employment terminates, the Company shall be dissolved." At his deposition, Kluga testified he owned the mark and that GALCO was using it with his permission. His declaration only serves to expand on this. Although no formal licensing agreement was ever in place regarding GALCO's use of these phrases, Kluga insists it was implied. *See Doeblers,* 442 F.3d at 824 (even in absence of express written license agreement, trademark license can be implied from parties' relationship and conduct); *Diarama Trading Co. Inc., v. J. Walter Thompson U.S.A., Inc.*, No.01Civ.2950(DAB)(DCF), 2005 U.S. Dist. LEXIS 19496 at *34, 2005 WL 2148925 at *11 (S.D.N.Y. Sept. 6, 2005) (same). The parties' conduct here supports the existence of an implied agreement, as Cobra has used these phrases since GALCO's dissolution in 2001.

Defendants dispute the existence of an implied license as well as Kluga's degree of control over the mark, but do not provide any affidavits or deposition testimony from any other GALCO or Cobra witness on these issues. Instead, they invoke the Employment Agreement (which references the Operating Agreement) to argue Kluga did not in fact exercise control over the mark because some of his actions were subject to approval by the president of GALCO's parent company.[2] This does not extinguish the existence of an issue of

---

[2] The Operating Agreement reads in relevant part:

> The Manager shall manage the day-to-day business and affairs of the Company. All decisions relating to the management and control of the conduct of the business of

8

material fact.[3]

Next, defendants challenge the validity of Kluga's assignment of the mark to Cobra. They argue that this constitutes an assignment in gross (i.e. without the goodwill associated with the mark) and is invalid. In order to protect consumers, the assignment of trademark rights must not be separate from the goodwill with which the mark has been associated. *TMT North America, Inc. v. Magic Touch GmbH*, 124 F.3d 876, 882 (7th Cir. 1997); *The Money Store*, 689 F.2d at 676 ("It is admittedly difficult to determine when a transfer of goodwill has occurred. This is particularly so in the case of a service mark.")

Kluga's assignment does not appear to be in gross. First,

---

the Company, including, but not limited to decisions relating to approval of ordinary course of business leasing transactions and the credit therefor, distributions to the Members . . . opening of bank accounts, invest of cash balances of the Company, refinancing of Company obligations, encumbering of Company property and selection of attorneys, accountants, appraisers and agents, shall be made by the Manager subject to approval of Members who hold more than 51% of Percentage Interests.

(Article XI, Management ¶ 11.1.)

[3] I find inapposite defendant's argument concerning case law addressing an employee's use of a mark as an agent for a company. Cobra does not argue Kluga obtained ownership by personally using the mark as an agent of GALCO. Plaintiff's position is that as the sole manager, president and part owner of GALCO - which was to be dissolved upon his departure under the terms of the Employment Agreement - he was in a position to control GALCO's use of the mark as its licensee.

9

although not dispositive, the text assignment here states it assigns "all right, title and interest in and to the Mark, together with the goodwill of the business symbolized by the mark . . . ." *Id.* (recitation that the mark is assigned together with goodwill is not dispositive). Second, consumer deception or confusion is not an issue here. This mark has only been used by the parties in connection with the banking and lease financing industry. In this case, the assignor's licensee, Cobra, is also the assignee. It simply cannot be said that the assignee's services will be of a different nature than those of the previous user's, for they are the same entity. *See id., Archer Daniels Midland Co. v. Narula*, No. 99 C 6997, 2001 U.S. Dist. LEXIS 9715 at *22, 2001 WL 804025 at *6 (N.D.Ill. July 12, 2001) (considering "whether the assignee continues to produce goods of the same nature and quality previously associated with the mark"); *see also* 2 McCarthy, *supra* § 18:24 (in determining whether goodwill has passed "[t]he emphasis should not been on a formalistic transfer of bits and pieces of tangible assets, but upon whether the assignee will probably go on in a real continuity with the past"). Even the mark's previous user, GALCO, engaged in banking and lease financing services. Accordingly, I find a triable issue concerning the transfer of goodwill.

b. Protectability

Defendants cannot establish the absence of an issue of

material fact concerning the protectability of this registered mark. Classification of a phrase as descriptive is a question of fact unlikely to be resolved on summary judgment in the absence of "evidence that is so one-sided that there can be no doubt about how the question should be answered." *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 171 (7th Cir. 1996). Terms that are suggestive, arbitrary, or fanciful are entitled to trademark protection because they are distinctive. *Two Pesos Inc. v. Taco Cabana Inc.*, 505 U.S. 763, 767-68 (1992); *G. Heileman Brewing Co., Inc., v. Anheuser-Busch, Inc.*, 873 F.2d 985, 993 (7th Cir. 1989) ("the ultimate test of descriptiveness is recognition by the consuming public."). Moreover, a registered mark is presumed not to be merely descriptive or generic. *See Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986).

The mark at issue here does not appear to be descriptive of the banking or lease financing industry. In fact, the phrases are devoid of any industry specific connotations. *See Sullivan v. CBS Corp.*, 385 F.3d 772, 776 (7th Cir. 2004) (finding word "survivor" arbitrary as it "is a common word that is being applied to a service unrelated to its meaning"). Defendants do not present any evidence addressing consumer perception, but rely on excerpts of Kluga's deposition testimony in support of their argument. *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 952-53 (7th Cir. 1992) (whether the average consumer perceived mark as

11

descriptive was issue of material fact). As a whole, however, Kluga's deposition testimony reinforces the existence of a question of material fact. In turn, the deposition testimony of LaSalle Bank witnesses Edward Dahlka and Norman Bobins, fails to identify a specific, descriptive link between the meaning of this phrase and the lease financing industry.[4] Ultimately betraying defendants' argument concerning the protectability of this mark is its corporate parent's current application for registration of the phrase "Making More Possible."

Finally, because I find a question of material fact exists concerning Cobra's ownership of a protectable mark, Defendants' remaining arguments against the dilution and state law claims are moot.

---

[4]Indeed, defendants' insistence that the phrase is "merely common self-laudatory advertising" borders on frivolous. Unlike the phrase at issue in In re Boston Beer Co., 198 F.3d 1370 (Fed. Cir. 1999), the case cited by defendants, the mark here is not facially descriptive. Boston Beer involved an appeal of the PTO's rejection of registration of the mark "The Best Beer in America." Id. at 1371. Contrary to defendants' argument, the phrase "Making Impossible Possible" does not constitute a proclamation of superiority such that it should be stripped of trademark protection. Under defendants' logic, service marks would not be allowed to stress any positive qualities to potential customers.

IV. Conclusion

For the reasons stated herein, defendants' motions to strike and for summary judgment are denied.

**ENTER ORDER:**

*Elaine L Bucklo*
_____
**Elaine E. Bucklo**
United States District Judge

Dated: September 19, 2006